### PRAY v. LEIBFARTH et al.
#### No. 946.

United States District Court
E. D. Michigan, N. D.

July 31, 1952.

614

Patterson & Patterson, Bay City, Mich., for plaintiff.

Leroy G. Vandeveer, Detroit, Mich., Clark & Henry, Bay City, Mich., for defendants.

PICARD, District Judge.

On June 13, 1951, Floyd J. Pray received judgment of $27,000 against the Estates of Hubert A. Leibfarth and, his son, Hubert T. Leibfarth, Jr., as the result of an acci-

dent, which happened while the son was driving his father's automobile, a Cadillac, insured by another company and that insurance money paid and applied on the judgment.

This writ of garnishment is against defendant Travelers Indemnity Company to collect from it as the insurer of Hubert T. Leibfarth, Jr.'s Pontiac automobile, which policy insured the owner of the Pontiac car for any judgment obtained against him for public liability not only while he was driving the Pontiac but while he was driving "any other automobile" but subject to certain exceptions found in Article V, subdivision (b) (1) of that policy as follows:

"(b) This insuring agreement does not apply:

"(1) to any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse."

The facts show that when the son was discharged from the service in 1946 he lived at his father's house, went to college for three years, returned home and worked at his father's jewelry store, had a room in his father's home at the time of the accident in October 1950, paid no room or board but which latter fact was considered in his pay for services in the jewelry store. In addition the son sometimes purchased groceries, but the father owned the home and all the furniture in his son's room, except a victrola. While the father, mother and son each had his and her own car, there was no arrangement by which one could drive the other's car although they sometimes did so by permission of the owner.

### Conclusions of Law

The question in this case is whether the son was covered by the "extended insurance" which he purchased with his Pontiac policy or did he come under one of the exceptions enumerated in V, (b) (1) above?

It is agreed between counsel that the underlying principle of interpretation of all policies of insurance which are prepared and issued by insuring companies,

shall in case of ambiguity be interpreted most favorably to the insured, and if it is possible to interpret any clause or part of an insuring policy in different ways it must be interpreted in the way most favorable to the insured. General Digest, Insurance, ☞146(2); Farm Bureau Mut. Automobile Ins. Co. v. Violano, 2 Cir., 123 F.2d 692.

■ We have examined the above provision V(b) (1) several times and find it to be very ambiguous. It is an unusual, confusing selection and arrangement of words and phrases. For this reason we cannot agree entirely with the conclusions reached in Aler v. Travelers Indemnity Company, D. C., 92 F.Supp. 620, 622, on this identical policy. Although that court may have properly interpreted the intention of the parties, it is a question of this contract as written and not simply what the insurance company intended if you can't reconcile the intent with the words used. After all this is a contract and it is not alone the intent of the company that controls. On what did the parties' minds meet? With that thought we have sought to analyze the above sub-paragraph.

It reads:

"(b) This insuring agreement does not apply: (1) to any automobile owned by".

Owned by whom?

We have searched the rest of the clause carefully but cannot find the answer. The sentence is not sufficiently punctuated. The court in Aler v. Travelers Indemnity Company, supra, says that this means

"owned by 'a member of his household'".

Admitting that such might have been the intention of the insurance company still you must add words or at least punctuation to the paragraph in order to make it read as the Aler case says it does. The fact that you must rewrite the sentence in order to make it complete is evidence of itself that the paragraph is ambiguous. And you cannot logically arrive at the above conclusion unless you put a comma after the words " 'the named insured' ".

But this alone would not be entirely fatal. There is something more important, to-wit, the fact that the insured was here-

in buying "extra insurance." He was protecting himself beyond an accident happening while driving his Pontiac because sub-paragraph (a) of V provides that the policy

"applies with respect to *any other automobile*" (Italics ours.)

the assured might be driving at the time of any accident, subject to the exceptions enumerated in sub-paragraph (b). So if the words

"to any automobile owned by"

"owned by a member of his household"

as stated in Aler v. Travelers Indemnity Company, supra, without the modification provided in the policy itself,

" 'furnished for regular use' "

then it not only deprives the insurer of public liability insurance on any other car he might own—which is fair and was probably intended—but likewise as to any automobile owned by any member of his household, even if he happened to drive that person's car once in ten years. Surely the latter was not intended. If so, this clause should have read

"to any Other automobile owned by means

Him or a member of his household."

But the policy provisions themselves are some proof of the company's intentions even though they are difficult to understand. That policy says that the insuring agreement does not apply to any automobile,

*"furnished for regular use to* the named insured or member of his household".

(Emphasis ours.)

There is no comma after or before the above words "the named insured" and the only way you can read that part of the paragraph and make sense is to read it as "all one" to-wit, that the extra insurance was not available when the insured was riding in

"a car furnished for regular use to" him or furnished for regular use to a

"member of his household."

And here we are taking "his household" as meaning the particular household of which he is a member, although plaintiff has built a formidable argument to the contrary. But this court does not appre-

ciate that the construction to be given "his household" is in any way controlling.

We are constrained to hold that the grammatical construction of that sentence is conclusive. We emphasize lack of a "comma" after or before the words "the named insured" and we emphasize that as to this part of the clause the only exception to the coverage purchased was when the buyer had regular use of someone else's car, be it a stranger's car or a car belonging to one of his own household. Are not the words "regular use" important?

The facts agreed upon here show the accident happened while Hubert T. Leibfarth, Jr., was driving a car that his father sometimes let him use, but not regularly and never without the father's permission. In this respect the facts are unlike the Aler v. Travelers Indemnity Company, case, supra, where the driver had regular use of his mother-in-law's car and judging from the statement made by the court in the Aler case in 92 F.Supp. on page 623, second column, this is so significant that had the facts been as herein it might have led to a different conclusion by Judge Chesnut.

Another point is illuminating. If, under this policy the insured was going to get additional insurance for himself to cover occasions when he drove anybody else's car—and that's what he bought—isn't it just as logical to conclude that in order to deprive him of this extra protection the car he might be driving at the time of an accident had to be a car furnished by someone for his regular use as it is to give it the narrow interpretation asked for by defendant?

If this paragraph is not given the rationale asked by plaintiff herein what extra insurance did defendant furnish Hubert T. Leibfarth, Jr.? If he drove his own car he was covered if he had an accident, as part of his regular policy, while if he was driving a car furnished by another as a regular practice, he wasn't covered if he had an accident. But here he was not furnished his father's car regularly. If he was going to have any extra insurance at all he had to have it while driving some one else's car, stranger's or relative's—not when he had the regular use of that car but when he was driving it temporarily or occasionally, as was the case here.

To us the words "regular use" and the lack of punctuation are controlling and since Hubert T. Leibfarth, Jr. does not come within the exception and it being the intent of defendant to provide insured with this extra insurance while driving someone else's car of which he did not have regular use, plaintiff should recover. We hold that this can be the only logical conclusion mindful that the clause in question is ambiguous and must be interpreted in favor of the insured.

An order in conformity with this opinion may be submitted for our signature.