REPUBLIC OF ITALY v. DE ANGELIS et al.

United States District Court
S. D. New York.
March 23, 1953.

Edward Garfield, New York City, Robert H. Wrubel, New York City, of counsel, for plaintiff.

Hahn & Golin, New York City, Reuben Golin and Alfred W. Bressler, New York City, of counsel, for defendants DeAngelis.

Moses & Singer, New York City, Alfred W. Bressler, New York City, of counsel, for defendant Adolf Gobel, Inc.

WEINFELD, District Judge.

This is another series of motions in a protracted litigation between the parties. Familiarity is assumed with the facts recited in the opinion of the District Court which denied a prior motion made by the defendant Anthony DeAngelis to vacate the attachment against his property issued upon the first claim of the complaint asserted against him individually, and which granted a motion made by the defendant partnership, comprised of DeAngelis and his wife, to vacate the attachment against partnership property based upon the second claim.[1]

The present motions enumerated hereinafter were supported and opposed by counter-affidavits. The parties have also referred to, and incorporated, the original papers upon which the respective attachments were granted in connection with one or more of the pending motions.

After study of the very voluminous affidavits, depositions of parties and witnesses, exhibits and the extensive briefs, I am persuaded that each of the motions made by the respective parties must be denied. These include the following:

(1) Motion by the DeAngelis partnership and Virginia DeAngelis individually for summary judgment dismissing the second count of the complaint;

(2) Motion by Adolf Gobel, Inc., for summary judgment dismissing the second count of the complaint;

(3) Motion by Adolf Gobel, Inc., for summary judgment dismissing the third count of the complaint;

(4) Cross-motion by plaintiff for summary judgment against Anthony DeAngelis in the sum of $835,701.80 on the first count;

(5) Counter-motion by Anthony DeAngelis for summary judgment dismissing the said first count;

(6) Motion by Anthony DeAngelis to vacate the attachment against his property obtained upon the first claim.

### Motions for Summary Judgment

The lengthy affidavits and other papers submitted by the parties with their various assertions, denials, cross-charges and the conflicting inferences sought to be drawn from the same facts serve to accentuate the existence of fact issues with respect to each of the claims upon which summary judgment is sought. It is, therefore, not surprising that each litigant in opposing the motion made by the other urges that credibility and demeanor is an important factor making a trial indispensable, and relies upon the oft-cited and leading authority of Arnstein v. Porter, 2 Cir., 154 F.2d 464, 469. To this authority might be added the recent rulings in National Labor Relations Board v. Dinion Coil Company, 2 Cir., 201 F.2d 484, 487–490, and Dyer v. MacDougall, 2 Cir., 201 F.2d 265, which further consider "demeanor" and its importance in the resolution of fact issues.

With respect to the motion made by the DeAngelis partnership to dismiss the second count of the complaint, the vacatur of the attachment as against it is not dispositive of its present motion for summary judgment. The basis of that determination was the insufficiency of the papers upon which the attachment was obtained. But, as the majority opinion affirming the order

1. D.C., 106 F.Supp. 605, affirmed 2 Cir., —— F.2d ——.

of the District Court notes, "the plaintiff may eventually mend its hold" and, as stated by the District Court [106 F.Supp. 613], "The proof may exist but it has not been submitted."

Virginia DeAngelis' affidavit now submitted, reciting the nature and extent of her participation in the various transactions and guarantee arrangements with the Public National Bank and Trust Company and with Messrs. Beane and Mason in connection with her husband's individual indebtedness, the partnership cancellation of the lease to the DeAngelis corporation to which she was a signatory, the subsequent conveyance of the property free of the lease to Adolf Gobel, Inc., may warrant the trier of the facts in drawing an inference that she individually and as a partner knew of, authorized and ratified the acts of her husband, and that these, with her consent and knowledge, were intended to benefit Adolf Gobel, Inc., the partnership as a stockholder therein, and herself.

Her categorical denial that she or the partnership participated in the conspiracy, or that she had knowledge of the representations of her husband, or that she authorized or ratified them, need not necessarily be accepted by the trier of the facts. On the contrary, such denial, as well as her other denials, in the light of all the circumstances, including her membership in the partnership, of which her husband was the only other member, might well lead to a contrary conclusion. Her demeanor and appearance on the witness stand could give the lie to her very assertions.

"* * * [T]he denial of one, who has a motive to deny, may be * * * such * * * as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies." [2]

So, too, in the instance of the motions made by Adolf Gobel, Inc., to dismiss the second and third claims. The categorical denial of participation in the conspiracy made by its officer, George Bitter, and the denials of intention to benefit Adolf Gobel,

Inc., or that it assumed the contracts in question, need not necessarily be credited; particularly so, since it now appears that all the directors and officers of the DeAngelis Corporation at the time of the negotiations leading to, and the consummation of, the contracts with the plaintiff, thereafter became directors or officers of Adolf Gobel, Inc., of which Anthony DeAngelis owned 58% of the stock and selected a majority of its directors; that all the officers and directors of Adolf Gobel, Inc., had knowledge of the contracts and Bitter had advised DeAngelis with respect thereto. Sufficient appears from which an inference may be drawn that Adolf Gobel, Inc., received a benefit of the alleged fraud with knowledge that it was committed.

The letter of December 8, 1951, the certificates of inspection issued by the Superintendence Company, the correspondence with the Bank of America with respect to the dock receipts and the extensions of the letters of credit, all relied upon so heavily by the defendants in support of their motions for summary judgment and also by DeAngelis individually on his motion to vacate the attachment to negate the basic claim of the plaintiff, simply serve further to emphasize the existence of other important fact issues.

As to the plaintiff's cross-motion for summary judgment against DeAngelis on the first claim, little need be added to the Court's comment made on this subject on the original motion to vacate the attachment. It was there pointed out that the question of consideration for, and the binding effect of, the memorandum of January 29, 1951, raised disputed issues of fact, the determination of which obviously must await trial.[3] Nothing contained in the present affidavits, those of the plaintiff or the defendants, warrants any change in view.

As to the defendant's counter-motion with respect to this first claim, it is difficult to believe that it was made with a serious purpose or prospect of success.

What was said by the Court of Appeals in Bozant v. Bank of New York, 2 Cir.,

2. Dye v. McDougall, supra [201 F.2d 269]

3. D.C., 106 F.Supp. 605, 609.

156 F.2d 787, 790, has particular application to this case, with its involved facts and ramifications:

"* * * [W]e cannot avoid observing that the case is another mistaken effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment."

The parties would be well advised to devote their talents and energies to trial preparation and to proceed to trial rather than to expend prodigious efforts on motions and cross-motions which obviously cannot be granted.

### Motion to Vacate the Attachment

█ There remains the motion made by Anthony DeAngelis individually to vacate the attachment now based upon affidavits.

The first four grounds advanced on the present application were urged on the prior motion made solely upon the papers upon which the warrant of attachment had been granted. With the exception of DeAngelis' categorical denial of the plaintiff's charges, and the letter of December 8, 1951, the inspection certificates, the correspondence with respect to the dock receipts, and the amendments to letters of credit, knowledge of which in some instances, and the effect of which in others, is put at issue by the plaintiff, much that is now contained in the affidavits in support of the present motion was advanced on the original application and is, in effect, an attempt to reargue the original motion. Nothing contained in the affidavits now submitted requires a different conclusion from that reached by the Court on the original motion to vacate.

In any event, the moving papers, which are contested on every central point, leave unimpaired plaintiff's showing of a prima facie case, and, certainly, they do not compel the conclusion that plaintiff must ultimately fail.[4] Without making a determination of the ultimate fact issues, the Court is satisfied that plaintiff has presented a prima facie cause of action against the defendant and has also sustained its burden of establishing by a fair preponderance the grounds upon which the warrant was obtained under Section 903, subdivision 6, of the New York Civil Practice Act.[5]

The defendant appears to labor under the impression that by raising factual issues with respect to the asserted cause of action or with respect to the grounds upon which the attachment was granted, he is entitled to a reference to determine these issues, and urges that the matter be referred to a Special Master—a reference, incidentally, which would involve a trial of all the issues. Some idea of the extent of such a reference, if granted, may be gleaned from the fact that some nine hundred pages of testimony taken upon deposition have been submitted as exhibits upon the present motions. There is no requirement that this procedure, which would but serve to delay the trial and final disposition of this matter, be adopted.

Telkes v. Hungarian Natural Museum, 265 App.Div. 192, 38 N.Y.S.2d 419, relied upon by the defendant to support his request for a reference, is not to the contrary. The basic dispute there was a jurisdictional one—the alleged immunity of the defendant from process—the favorable determination of which would have terminated the litigation, and, of course, the right to an attachment. Moreover, Rule 108 of the New York Civil Practice Act provides that where an attack upon the jurisdiction of the Court over the person of the defendant or the subject matter of the action is made, as provided for in Rule 107, the Court may hear the same or it may direct that the issue be tried by a jury or referee. Here, jurisdiction over the person of the defendant or the subject matter of the action is not at issue nor is it the basis of the present motion. What is disputed is the essential facts upon which the right to the attachment is bottomed. Accordingly, neither Telkes v. Hungarian Natural Museum, supra, nor Hannes v. Kingdom of Roumania Monopolies Institute, 260 App.Div. 189, 20 N.Y.S.2d 825, also relied upon by defendant, is apposite to the instant motion.

4. Bernstein v. Van Heyghen, 2 Cir., 163 F.2d 246, 248, certiorari denied 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357.

5. See Bard Parker Co. v. Dictograph Products, 258 App.Div. 638, 17 N.Y.S.2d 588.

▇ ·There remains. for .consideration the fifth ground for the vacatur of the. attachment—the only one not previously urged—that .the causes of action asserted in the first and second counts of the complaint are not both causes of action upon which an attachment may issue. This is based upon the· established New York' law which voids or precludes the issuance of a warrant of attachment where the plaintiff joins a cause of action upon which an attachment may issue with another wherein an attachment is not authorized by statute.[6] The underlying reason is that in such a case the recovery against a defendant might be for the cause of action upon which no attachment could have been issued, with the practical result that satisfaction of such a judgment would be enforced through an attachment upon a claim for which no attachment was procurable.

The first paragraph of the complaint states a claim against Anthony DeAngelis individually for breach of contract. The attachment was issued under Section 903, subdivision 6, of the New York Civil Practice Act, which authorizes an attachment against a party where "In an action upon contract, express or implied [he], has been guilty of a fraud in contracting or incurring the liability".

The second count of the complaint asserts a tort claim against the DeAngelis partnership, Adolf Gobel, Inc., and Virginia DeAngelis, charging them with a continuing conspiracy to induce plaintiff to enter into the contracts with the DeAngelis Corporation by fraudulent representations, including the charge that thereafter they wilfully and without justification induced the breach of those contracts and further prevented the plaintiff from obtaining redress for its loss by fraudulently transferring assets of the DeAngelis Corporation and the DeAngelis partnership beyond the reach of creditors, including the plaintiff. The attachment against the partnership, which subsequently was vacated, was granted under Section 903, subdivision 3, of the New York Civil Practice Act. on the ground that the partnership. had assigned, disposed of and secreted its property with intent to defraud its creditors. Anthony DeAngelis was named as a conspirator but not as a defendant in this second count. This is the difficulty with the defendant's position.[7]

Plaintiff was clearly within its right in suing only those conspirators from whom recovery was sought. It was not required to sue or join all the named conspirators as defendants.[8] Its omission of Anthony DeAngelis as a codefendant in the second count was clearly deliberate and was intended to avoid the consequences of joining a cause of action against a defendant upon which an attachment may be obtained with one upon which an attachment is not so procurable.

However, the defendant complains that this omission to seek judgment against the chief architect of the conspiracy charged was intended to circumvent the effect of the New York law and that notwithstanding the failure to sue him explicitly together with the other co-conspirators, in practical terms he is a defendant in the second claim as a member of the partnership. This contention is based upon the claim that the service of summons upon the partnership was made upon him as a member thereof and as such partner any judgment obtained in the second claim is binding upon him and would be collectible out of his individual assets, including those impounded under the warrant of attachment.[9]

6. Brown v. Chaminade Velours Inc., 176 Misc. 238, 26 N.Y.S.2d 1009, affirmed 261 App.Div. 1071, 26 N.Y.S.2d 1012; Union Consolidated Mining Co. v. Raht, 9 Hun 208, appeal dismissed 68 N.Y. 629.

7. Parenthetically, it may be observed that it is doubtful that, even had Anthony DeAngelis been joined in the second count, the attachment under the first would necessarily be affected, since the second count is one to recover a sum of money only, assuming that plaintiff could establish an authorized ground of attachment. See Sections 902 and 903 of the New York Civil Practice Act.

8. Walsh v. New York Cent. & H. R.R.R. Co., 204 N.Y. 58, 97 N.E. 408, 37 L.R.A., N.S., 1137; Bush v. Murray, 209 App. Div. 563, 205 N.Y.S. 21; Martin v. Chandler, D.C., 85 F.Supp. 131.

9. Sugg v. Thornton, 132 U.S. 524, 10 S.Ct. 163, 33 L.Ed. 447; Rule 69, Federal

The Marshal's return, however, indicates that process upon the partnership was not effected upon Anthony DeAngelis as a member thereof, but that a summons was served upon him in his individual capacity as the sole defendant in the first claim.

The defendant's intense desire to be made a defendant or assume the role of one in the second count is motivated by no noble purpose of seeking to vindicate any assault upon him. His plea to be considered a defendant is a stratagem intended to compel the vacatur of the attachment against his individual property under the first claim. Plaintiff had a right to protect the privilege of attachment, even though it decided to join other causes of action arising out of the same or similar transactions, a policy which the law encourages.[10] Plaintiff to assure that no execution will be issued against the property of the individual defendant upon any judgment recovered upon the second claim, consents that the complaint be made even more specific so that enforceability of any judgment so recovered will be limited to partnership assets and the individual property of Virginia DeAngelis. The complaint appears sufficiently clear as now drawn, but to avoid any doubt on the subject, the plaintiff's request to amend is granted.[11]

Settle order on notice.

Rules of Civil Procedure, 28 U.S.C.A.; Sections 222–a, 1198, New York Civil Practice Act.

**10.** Rule 20, Federal Rules of Civil Procedure; Section 212, New York Civil Practice Act; Englehardt v. United States, 69 F.Supp. 451, 454.

**11.** Cf. Beltran Associates v. Steamaster Automatic Boiler Co. Inc., Sup., 92 N.Y. S.2d 691.